IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 13, 2015

**STATE OF TENNESSEE v. FRED CALVIN LEE**

**Appeal from the Circuit Court for Williamson County**
**No. II-CR-017770       Michael W. Binkley, Judge**

**No. M2014-01655-CCA-R3-CD – Filed July 1, 2015**

The Defendant, Fred Calvin Lee, pleaded guilty to two counts of delivery of 0.5 gram or more of cocaine, Class B felonies. *See* T.C.A. § 39-17-417 (Supp. 2013) (amended 2014). The trial court sentenced the Defendant as a Range I, standard offender to serve concurrent terms of ten years for each conviction. On appeal, the Defendant contends that the trial court failed to consider all of the relevant sentencing factors and erred by denying alternative sentencing. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

Vanessa P. Bryan, District Public Defender; Benjamin C. Signer, Assistant Public Defender (on appeal), and Glenn Funk and John Jackson (at the guilty plea and sentencing hearings), Nashville, Tennessee, for the appellant, Fred Calvin Lee.

Herbert H. Slatery III, Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General; Kim R. Helper, District Attorney General; and Sean B. Duddy, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

At the plea hearing, the Defendant pleaded guilty as charged in the indictment and received ten years for each conviction. The parties agreed that the trial court would determine the manner of service. The State's recitation of the facts relative to Count 1 showed that

on the 5th day September 2013, Detectives with the Franklin Police Department Narcotics Unit did utilize a confidential informant to arrange delivery of an amount of cocaine from the Defendant . . . . Confidential informant was provided with recorded [police] funds, fitted with a transmitter and recording device. Confidential informant was surveilled then to the location . . . [in] Williamson County, Tennessee. Whereupon arriving at the location the confidential informant did make contact with the Defendant, up on the front porch of the Defendant's residence. The Defendant did go into the residence after making contact with the confidential informant[,] came back out, did deliver to the confidential informant an amount of white substance. Confidential informant did in turn deliver back the recorded money. The white substance was . . . submitted to the TBI and it came back positive for . . . cocaine, an amount greater than .5 gram[].

Relative to Count 2, the State's recitation of the facts showed that

on the 6th[] day of September, again Detectives . . . did utilize a confidential informant to arrange delivery of an amount of cocaine from the Defendant . . . . Again, all the same arrangements that were in Count 1 were made. The confidential informant was surveilled again, out to the address . . . in Williamson County, Tennessee. Upon the confidential informant arriving at the residence, the Defendant arrived simultaneously. The Defendant was observed going into the residence and then came back out whereupon coming back out made contact with the confidential informant. Did deliver to the confidential informant a white substance, . . . [which] was submitted to the TBI for analysis and did come back positive for . . . cocaine[] in an amount greater than .5 gram[].

At the sentencing hearing, the presentence report was received as an exhibit. The report showed the Defendant had previous convictions for five counts of cocaine-related offenses, five traffic-related offenses, three counts of driving with a suspended license, two counts of perjury, two counts of violating the driver's license law, and a theft-related offense. The report showed that in a previous case, the trial court revoked the Defendant's probation and ordered him to serve his sentence in confinement because he failed to report to his probation officer, incurred new criminal charges, and failed to complete his "public work" requirement. The report showed that the Defendant was later released on parole, which expired on February 25, 2011.

The Defendant reported completing the tenth grade, but he later obtained his GED and certifications in industrial cleaning, plumbing, and upholstery. The Defendant reported leaving high school because a woman was expecting his child and because he went to prison. He obtained his occupational certifications while in confinement. The Defendant reported good mental and physical health and denied abusing alcohol. He first consumed marijuana at age eighteen and admitted smoking marijuana two weeks before the presentence evaluation. He reported employment with a collision repair center for two years at the time of the interview and previous employment with a landscaping business for about four years.

Franklin Police Narcotics Detective Keith Martin testified that as a result of his time as a patrolman and a detective, he had concluded that Williamson County had a problem with cocaine. He had participated in hundreds of controlled cocaine purchases. He said that cocaine-related activity was associated with other criminal offenses, including assault, weapon violations, theft, and violent offenses.

Detective Martin testified that his confidential informant reported to him that the Defendant was selling cocaine and that the informant and the Defendant arranged for the informant to purchase cocaine from the Defendant on September 5 and 6, 2013. Relative to the September 5 controlled purchase, the Defendant and the informant agreed upon $120, but the informant only brought the Defendant $100. The informant and the Defendant discussed the price, and the Defendant entered his home and returned to the front porch with a substance that was later determined to be cocaine. Detective Martin said that the controlled purchase occurred around 5:00 p.m. in a typical residential area and that children were walking on the street.

Detective Martin testified that the September 6 controlled purchase was conducted in the same manner and occurred after 12:00 p.m. Detective Martin recalled that a child played in the Defendant's yard and that a woman walked onto the porch and talked to the confidential informant while the informant waited for the Defendant to return with the cocaine.

Damian Hodge testified for the defense that he was a professor at Tennessee State University and that he had known the Defendant since they were both children. The men grew up in the same community and had maintained their friendship. He discussed the Defendant's progress in his willingness to care for his children. Mr. Hodge noted that the Defendant's children were doing well because of the Defendant's involvement and that the Defendant and the mother of his children had a good relationship. Mr. Hodge requested leniency for the Defendant because the Defendant had turned around his life. He noted the Defendant's children were ages eight, thirteen, nineteen, twenty-one, and twenty-two.

Mr. Hodge testified that the Defendant had changed jobs recently and that he was unsure where the Defendant worked, although he knew of the Defendant's employment at the collision repair center and the landscaping business. He believed the Defendant would complete probation successfully and said he would contribute as a member of the Defendant's support system.

On cross-examination, Mr. Hodge acknowledged that the Defendant had been previously convicted of selling cocaine in 1994, 1995, and 1996 and said that although the Defendant had been involved with drugs, the Defendant had "grown." He did not think the Defendant was "in that place anymore." He agreed that a good father did not sell cocaine in the presence of children.

Travis Leach testified that he worked as a mason and that he had known the Defendant all his life. He previously worked with the Defendant and said he called the Defendant when he needed an extra worker. He said the Defendant worked for him on the weekends and when the Defendant needed work. He said that for two years, the Defendant worked on a semi-regular basis. He said depending on the job, the Defendant was usually paid about $100 to $120 per day. He said the Defendant was dependable, honest, and hard working. He said the Defendant had good character, although he did not approve of the Defendant's selling drugs. He thought, though, that the Defendant would not get in trouble again and that the Defendant's character would enable him to complete any probation successfully.

The Defendant testified that his wife and mother were present for the hearing, although his wife had to leave early for work. He said he worked for the collision repair center for two years but recently lost his job because of the present case. He said he found work quickly at the landscaping business and provided the trial court with a letter from his supervisor. The letter was submitted by Wilfredo Hernandez, who was the operation manager at the landscaping business. In the letter, Mr. Hernandez stated that in spite of the Defendant's previous transgressions, the Defendant was hard working, dependable, and punctual. Mr. Hernandez asked the court to consider the Defendant's commitment to his family and said the Defendant made a mistake and was remorseful for his conduct.

The Defendant testified that he worked about fifty to fifty-five hours per week at the landscaping business. He said that if he received probation, he would live with his wife and three minor children. He was willing to undergo frequent and random drug screens, to comply with a curfew, and to verify his employment. He said his going to prison would change his wife's and children's lives and admitted he sold drugs to "make ends meet" after his wife was laid off from her job.

The Defendant testified that he made a mistake when he decided to sell drugs to provide for his family. He acknowledged he was convicted of the same conduct when he was age twenty-two and said he only attempted to supplement the household income. The Defendant said that "this will never happen again, period."

On cross-examination, the Defendant testified that he dropped out of the eleventh grade to support his unborn child, that he obtained his GED in prison, and that he later dropped out of the Arts Institute when his twins were born. He acknowledged his selling cocaine was illegal. He said that at the time of the offenses, the twins and his thirteen-year-old stepdaughter lived with him and his wife. He admitted that at the time of the offenses, he was working forty hours per week and received medical benefits at the collision repair center. He had been working there for about nine months at the time of his arrest. He said that although he earned $11 per hour and received benefits, he struggled to pay the bills and to provide for his family because his wife had lost her job through no fault of her own.

The Defendant testified that he obtained the cocaine from people he knew who had it. When pressed by the prosecutor to identify the people who sold it to him, the Defendant said that he was sorry for his actions and that he made a mistake. He said, "I just can't give you names." He said he bought cocaine for about $40 or $50 and sold it for about $100 or $120. He did not recall how often he sold cocaine per week and said he only sold occasionally. The Defendant acknowledged that he had four previous convictions for selling cocaine and that he spent about five years in prison for those offenses. He denied he had a habit of smoking marijuana.

The Defendant testified that he began working at the landscaping business about two weeks before the hearing and that he was terminated from the collision repair center about two months before the hearing. He found part-time employment with Mr. Leach between the jobs. Although he did not recall his children being present during the controlled purchases, he agreed a good father did not expose his children to drugs. He said, though, that a good father attempted to provide for his family.

The trial court relied heavily upon the presentence report and the sentencing data provided by the Administrative Office of the Courts (AOC) relative to the "percent of sentence as to the offense, the case offender, and the offense dates." The court recited the AOC statistics relative to the incarceration and probation rates for the offenses of which the Defendant was convicted and his Range I, standard offender classification. According to the AOC statistics, the mean number of months in which a defendant served in confinement was 107.09. The mean number of months in which a defendant was placed on probation was 105.32. Relative to split confinement, the mean was 7.9 months' incarceration and 99.3 months' probation. The court conceded that the data reflected convictions for 0.5 gram to

-5-

299.9 grams of cocaine and that the data did not distinguish the amount of cocaine possessed.

The trial court credited Detective Martin's testimony relative to the controlled purchases and Mr. Hodge's testimony relative to the Defendant's coming a long way from his first drug-related conviction in the 1990s. The court credited the Defendant's testimony relative to his work history and noted that the Defendant was resilient after losing his job at the collision center and that the Defendant found work to support his family. Although the court did not discredit the Defendant's testimony that he sold cocaine to supplement the household income after his wife lost her job, the court placed little weight on the testimony. The court noted that the profit margin for selling cocaine was low and that either the Defendant sold a large quantity of cocaine to make ends meet or was a poor salesman. The court found that "a lot did not match up" with the Defendant's selling drugs to provide for his family.

The trial court found that the Defendant had several previous drug-related convictions involving the sale of cocaine. The court noted that the presentence report showed the convictions dating from the early 1990s. Although the court stated that prior convictions for the same offense did not bode well for the Defendant, it considered the Defendant's supporting his stepdaughter and twins and his employment history. The court stated that it had reviewed and considered the sentencing principles in Tennessee Code Annotated section 40-35-103. Although the court did not find that the Defendant had a long history of criminal conduct because of the gap between the drug-related convictions, the court found that the Defendant had been engaged in continued criminal conduct. Relative to avoid depreciating the seriousness of the offense and to deterrence, the court found that because the sale of drugs oftentimes involved weapons, violence, and other criminal activity, everyone nearby at the time of the controlled purchases was at risk. The court found that the Defendant thought about but disregarded the risks associated with selling cocaine.

The trial court found that mitigating factor (7) applied. *See* T.C.A. § 40-35-113(7) (2014) ("The defendant was motivated by a desire to provide necessities for the defendant's family[.]"). However, the court found that better alternatives existed to support his family and stated that the Defendant took the easy and fast route. The court found that based on the facts of the case and the Defendant's previous history and convictions, it did not heavily weigh this factor in the Defendant's favor.

The trial court found that statutory enhancement factor (1) applied based on the Defendant's criminal history. *See* T.C.A. § 40-35-114(1) (2014) ("The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range[.]"). The court noted the Defendant's history of selling cocaine. The court found that this same conduct resulted in the Defendant's serving a

-6-

sentence in confinement and his violating the conditions of his probation. The court did not find that factor (10) applied but stated that the Defendant risked the safety of innocent bystanders every time he sold cocaine. *See id*. § 40-35-114(10) ("The defendant had no hesitation about committing a crime when the risk to human life was high[.]"). The court noted the Defendant's children were present during the controlled purchases.

The trial court ordered the Defendant to serve his sentence in confinement. The court found that the Defendant had failed to present evidence that he had changed his character relative to his choosing to sell cocaine. The court noted that perhaps the Defendant had changed his character for a few years but that the Defendant had returned to selling cocaine. The court stated that the Defendant's previous history "really does not give me any other opportunity to give . . . any other relief." This appeal followed.

The Defendant contends that the trial court failed to consider all of the relevant sentencing factors and that the court erred by denying alternative sentencing. He argues that the court failed to consider whether measures less restrictive than confinement had frequently or recently been applied unsuccessfully or the Defendant's potential for rehabilitation. He requests this court apply a de novo standard of review. The State responds that the court properly considered all of the principles of sentencing and properly ordered the Defendant to serve his sentence. We agree with the State.

This court reviews challenges to the manner of service of a sentence within the appropriate sentence range "under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). A trial court must consider any evidence received at the trial and sentencing hearing, the presentence report, the principles of sentencing, counsel's arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct, any mitigating or statutory enhancement factors, statistical information provided by the AOC as to sentencing practices for similar offenses in Tennessee, any statement that the defendant made on his own behalf, and the potential for rehabilitation or treatment. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991) (citing T.C.A. §§ 40-35-103 (2014), -210 (2014); *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986); *State v. Taylor*, 744 S.W.2d 919 (Tenn. Crim. App. 1987)); *see* T.C.A. § 40-35-102 (2014).

The standard of review for questions related to probation or any other alternative sentence is an abuse of discretion with a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). Generally, probation is available to a defendant sentenced to ten years or less. T.C.A. § 40-35-303(a) (2014). The burden of establishing suitability for probation rests with a defendant, who must demonstrate that probation will "'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (quoting *State v. Dykes*, 803 S.W.2d 250, 259

(Tenn. Crim. App. 1990)); *see* T.C.A. § 40-35-303(b); *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008).

A sentence is based upon "the nature of the offense and the totality of the circumstances," including a defendant's background. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991); *see State v. Trotter*, 201 S.W.3d 651, 653 (Tenn. 2006). A trial court is permitted to sentence a defendant to incarceration when:

> (A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A)-(C); *see Trotter*, 201 S.W.3d at 654.

The record reflects that the trial court considered all the appropriate principles and purposes of sentencing, and we disagree that the court failed to consider whether measures less restrictive than confinement had been applied unsuccessfully to the Defendant. Although the court did not explicitly identify by name Code section 40-35-103(1)(C), the record reflects that it found that the Defendant had previously served a sentence in confinement for selling cocaine and that he also violated the conditions of probation. Likewise, the court stated that it had considered the presentence report, which showed that in a previous case, the Defendant's probation was revoked and he was ordered to serve his sentence in confinement because he failed to report to his probation officer, incurred new criminal charges, and failed to complete his public work requirement. As a result, we conclude that the court considered whether measures less restrictive than confinement had been applied unsuccessfully to the Defendant.

Relative to the Defendant's potential for rehabilitation, the trial court relied heavily on the Defendant's previous convictions for selling cocaine and expressed concern whether the Defendant's character had changed relative to his choosing to sell cocaine. The court noted that perhaps the Defendant had changed his character for a few years but that the Defendant had returned to selling cocaine. The record reflects that although the court did not specifically reference the phrase potential for rehabilitation, the court considered the Defendant's lack of potential for rehabilitation in ordering him to serve his sentence.

We, likewise, conclude that the trial court did not abuse its discretion by ordering the Defendant to serve his sentence in confinement. Although the Defendant was eligible for alternative sentencing, his previous felony convictions for selling cocaine resulted in his unfavorable candidacy for alternative sentencing. *See* T.C.A. § 40-35-102(6)(A) (stating that "a defendant who is being sentenced for a third or subsequent felony conviction involving separate periods of incarceration or supervision shall not be considered a favorable candidate for alternative sentencing"). The court's denial of alternative sentencing was heavily influenced by the Defendant's continuing to sell cocaine and for the need to avoid depreciating the seriousness of the offense. The court discussed the seriousness of the Defendant's decision to sell cocaine in the context of the risks created by his conduct and its concern that the Defendant engaged in conduct that was often associated with weapons and violent crime in the presence of children and innocent bystanders. The court also discussed the Defendant's disregard of the risks of arrest and confinement when he chose to sell cocaine from his home. The Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE